JOHN T. CHATTAWAY, JR., ET AL. V. CITY OF NEW LONDON

SUPERIOR COURT     NEW LONDON COUNTY     FILE NO. 16562

Memorandum filed April 30, 1946.

*Hull, McGuire* and *Hull*, of New London, for the Plaintiffs.

*Edmund J. Eshenfelder*, of New London, for the Defendant.

INGLIS, J.   This is an action seeking a judgment declaring whether the fee or easement for street purposes in certain strips of land known as Riggs Place, Danby Road and Winship Court is vested in the defendant city, and whether the said city has any duty to construct and open said strips of land for travel and use.

In 1929, one E. O. Winship owned certain land located in the southern part of the city of New London, which land was known as the Riggs estate. He undertook to develop it by dividing it into building lots.   The plaintiffs are his successors in title as to a considerable number of those lots.

Section 93 of the charter of the city of New London, under the head of "City Planning Board," reads in part as follows: "Any proprietor of lots or grounds within the city, who subdivides or lays them out for sale, shall cause to be made an accurate map or plot of such subdivision describing with certainty all grounds laid out or granted for streets . . . or other public uses. . . . Such map or plot shall be described by the proprietor . . . in writing, acknowledged before an officer authorized to take acknowledgment of deeds, who shall certify the acknowledgment of the instrument, and be recorded in the office of the town clerk.   The map or plat so recorded shall thereupon be sufficient conveyance to vest in the city, when accepted by the city, the fee or easement for street purposes in the parcel or parcels of land designated or intended for streets . . . or other public uses, to be held in the corporate name in trust to and for the uses and purposes in the instrument set forth, expressed, designated or intended."

On October 30, 1929, said Winship filed in the New London town clerk's office a map which fully complied with all of the requirements of § 93 of the charter.   This map showed the Riggs estate divided into lots and three proposed streets, designated as Riggs Place, Danby Road and Winship Place, and on profiles showed the existing grade and the proposed grade of those streets.   The map also had on it the indorsement of the city engineer, who under the charter was also the chief engineer of the planning board and the platting officer, in these words:   "Approved for street grades and property layout."   It also had on it:   "Approved by the planning board, Oct. 30th, 1929," and that was signed by the secretary of the board.   In addition Winship executed and had recorded a warranty deed, dated November 4, 1929, conveying to the city "for use for the

purpose of public highways" the three strips of land in question. This deed contained the provision that "in accordance with an ordinance of the City of New London" the grantor waived all claims for damages occasioned by the establishment of grades and the present and future alteration of the surface of the streets to conform to the grade so established. This deed was "approved as to form and correctness" by the city's then director of law.

Section 94 of the charter reads in part as follows: "The council shall by ordinance provide regulations governing the platting of all lands so as to require all streets and alleys to be of proper width, grade and location . . . and otherwise to conform with the regulations as to the plan of the city. . . . When any person plats any land within the corporate limits of the city, as hereinbefore provided, the platting officer shall, if such plats are in accordance with the rules prescribed by the council, endorse his written approval thereon. No plat subdividing lands within the corporate limits shall be entitled to record in the office of the town clerk without such written approval endorsed thereon."

Section 95 of the charter provides in part: "No streets or alleys . . . except those laid down on a plat bearing the approval of the platting officer as hereinbefore provided, shall subsequently in any way be accepted as public streets, [or] alleys . . . nor shall any public funds be expended in the repair or improvement of any such street, [or] alley . . . laid out and not on such plat."

The plaintiffs do not claim that the strips of land in question have become highways by common law. They have not been accepted as such ways by the uses of the unorganized public. What the plaintiffs do claim is that there has been a statutory dedication. They contend that, their predecessor in title having done everything required of him by the foregoing provisions of the charter and the platting officer having indorsed the plat as approved, all of the requirements of the charter to make the dedication and acceptance complete have been performed. Specifically, they take the position that no vote of the city council was requisite to complete the dedication.

That this position is not well taken and that the charter contemplates something beyond the stamp of approval placed upon

the plat by the platting officer in order to constitute an accept-ance by the city are apparent from a careful reading of the charter provisions. Section 93 provides that the plat shall be sufficient dedication of the highways "when accepted by the city." Section 94 requires the approval of the platting officer but it does not provide that such approval shall constitute an acceptance by the city. And that it is not intended to be an ac-ceptance by the city appears clearly from the provisions of § 95 to the effect that no street appearing on a plat which does not bear the approval of the platting officer shall "subsequently" be accepted. The acceptance by the city is something which comes after the approval by the platting officer. In other words, the acceptance by the city which is required by § 93 to com-plete the dedication clearly means an acceptance by a vote of the city council, the only body which has general power to bind the city.

As a matter of fact, the question whether the city should accept the dedication of the highways in question was brought to the council. At its meeting of November 4, 1929, a com-munication was received from the planning board, recommend-ing that the council accept the plan of the subdivision of the Riggs estate with the profile of proposed streets "when the re-quirements of an ordinance relative to the layout of streets, platting of land, etc., [have] been complied with." Upon that recommendation the council "voted that the council hereby ap-proves of the revised plan of the layout of the Riggs property" and "voted—The conveyance from W. O. Winship to the city of New London of the tracts of land called Riggs Place, Danby Road and Winship Court, as shown on plan of Riggs estate revised plan of subdivision for Dr. E. O. Winship, as approved by the Planning Board be and the same is hereby approved. Nothing herein shall be construed as an acceptance of said streets as public highways of the city of New London until the provisions of the ordinance relating to the layout of streets and platting of lands have been complied with."

The ordinance thus referred to was one adopted February 19, 1923. Section 1 thereof provides: "No street . . . shall be laid out, constructed or opened for travel or use except by and with the express consent of the Council of the city of New London, nor unless the grade, lay-out, location and width of the same have been approved by the Council of the City." This section makes it plain that the acceptance by the city required

for the completion of a statutory dedication of a street referred. to in § 93 of the charter is to be an acceptance by the council. It also makes it plain that a part of what the council is to accept is the grade of the proposed street, i. e., the grade as shown by the profiles on the map. And it means that the land within the area set aside for the street must be brought to that grade before acceptance.

Section 2 of the same ordinance reads: "No street for public use shall be laid out, constructed or opened for travel, unless the same be at least three rods in width and curbs have been laid to the satisfaction of the council." This section clearly means that no proposed street may become a public highway until curbs have been laid to the satisfaction of the council. This section is in no way affected by § 108 of the charter, because the latter applies only to the improvement of streets which have already been laid out as public highways. The section of the ordinance applies to streets which it is proposed to create by dedication by way of a map and provides that they must be curbed before the layout as a street is complete.

Since the adoption of the above votes of the council on November 4, 1929, nothing has been done by anyone toward the acceptance of the proposed streets. The land has not been brought to the grade indicated on the profiles, which work Winship impliedly agreed to do by putting the profiles on his map. No curbs have been laid. The council has taken no further action.

The case therefore simmers down to this: The charter provides in substance that no dedication of the highways by plat shall be complete until it has been accepted by the city. The acceptance by the city can be only by a vote of the council expressly accepting the proposed streets as public highways. In this case the council has approved the Winship plan but it has expressly stated that such approval is not to be construed as an acceptance of the streets as public highways and that such acceptance would not be voted until the provisions of the ordinance were complied with. That means in particular that the council would not vote to accept the dedication until the proposed streets had been brought to grade and had been curbed. This never having been done, clearly the proposed streets have never been accepted, and therefore the statutory dedication is not complete.

Something should be said concerning the deed executed by Winship on November 4, 1929. This deed apparently was made because the parties thought that it was at least an expedient step in the dedication. Under a former ordinance, which had been repealed by implication by the adoption of the 1923 ordinance, it apparently had been the practice to give such deeds. Under the present procedure, however, such a deed is not required nor is it contemplated. There is no authority for the city to accept such a deed so far as it purports to be a conveyance of land or an easement in the land. It does not appear that the council ever did accept it The deed in question as a conveyance, therefore, is nugatory. Besides being a purported conveyance, this deed also releases the city from all claims for damages from the establishment of grade or change of grade. It is argued by the plaintiffs that this indicates that it was the intention of the parties that the grading of the proposed highways should be done by the city. Such a conclusion does not follow. What the grantor is doing is releasing the city from all future claims for damage to his abutting property, not to the land within the proposed streets. It refers therefore to damage resulting from the fixing of the grades and leaving the surface of the streets at that grade, not from the work of filling or excavating to bring the streets to grade. In a sense it could at least be claimed that in accepting the grade as shown on the map the city was fixing the grade, and it was from a possible claim for damages from that fixing of the grade that the deed gave the city a release. It had nothing to do with damage resulting from the work of grading. Accordingly, it sheds no light on what the intention was as to who was to do the work of grading. In any event, the reasoning by which such intention could be inferred is much too tenuous to overcome the fact that the council expressly withheld its acceptance of the dedication of the streets until after the grading should be done and the curb laid. In doing that, the council clearly intended that the work should be done by the dedicator of the streets before the streets were accepted.

One other contention is made by the plaintiffs. It is that, inasmuch as the land records show a dedication of these streets, they as takers for value had a right to rely on those records and the city is estopped now to deny the dedication. The answer to that contention is obvious. It is that under the charter, as stated above, the dedication is not complete until the council has

voted to accept it. Accordingly, a purchaser should not expect to find the complete record of a dedication in the land records. He is put on notice that the final act of a dedication is to be found in the records of the council and nowhere else. He therefore, in such a matter, is not entitled to claim an estoppel based on the land records alone.

Judgment may enter adjudging that neither the fee nor an easement for street purposes in said Riggs Place, Danby Road or Winship Court is vested in the city of New London in trust to and for street uses and purposes; that the city of New London has no title to said strips of land and that the city of New London has no duty to construct or open said strips of land for travel or use. No costs shall be taxed against either party.